UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gregory Kvidera,

      Plaintiff,

v.                          **MEMORANDUM OPINION**
                              **AND ORDER**
                            Civil File No. 16-cv-1296 (MJD/ECW)

WECsys, LLC, a Minnesota
limited liability company,

      Defendant.

Andrew P. Muller, Muller & Muller, PLLC and John A. Klassen, John A. Klassen, PA, Counsel for Plaintiff.

Abram Pafford and David D. Leishman, McGuire Woods LLP, Counsel for Defendant.

**I.    Introduction**

      This matter is before the Court on Defendant's Motion to Dismiss the First Amended Complaint ("FAC") for failure to state a claim. (Doc. No. 55.)

**II.    Procedural History**

      This action was filed on May 16, 2016 as a qui tam action pursuant to 31 U.S.C. § 3730(b)(2). Initially, there were four individual relators, the United

1

States of America and the State of Minnesota. On August 25, 2020, this Court dismissed, without prejudice, Count 1 of the Complaint which asserted violations of the False Claims Act, pursuant to the agreement of the parties. (Doc. Nos. 41 and 45.) Relator Gregory Kvidera ("Kvidera") did not agree to dismiss Count II, a False Claims Act Retaliation claim. (Id.) Thereafter, Kvidera filed the FAC in which he asserts Defendant WECsys, LLC ("WECsys" or "Defendant") unlawfully retaliated against him in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) and the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932. (FAC ¶ 53–65.) WECsys now seeks to dismiss all claims in the FAC with prejudice.

### III. Factual Allegations

WECsys hired Kvidera as the company's President and COO in 2013. (FAC ¶¶ 8, 21.) WECsys's owner, Ajayi Akinkuotu ("Akinkuotu"), ran the company's daily operations. (Id. ¶ 19.) WECsys has been in business for over twenty years, selling office supplies and other commercial products to government agencies through Multiple Award Schedules ("MAS") General Services Administration ("GSA") contracts. (Id. ¶ 20.) GSA negotiates, approves and manages many contracts with government vendors such as WECsys. (Id.)

Kvidera alleges that because WECsys is a government contractor, it must comply with all federal contracting requirements.  (Id. ¶ 18.)  The United States Trade Agreements Act of 1999 (the "TAA"), 19 U.S.C. § 2501, prohibits government buyers from acquiring end-user items other than those made in the USA or in countries that are signatories to the World Trade Organization's Agreement on Government Procurement, and that generally, the TAA applies to all Federal Supply Schedule contracts ("FSS").  (Id. ¶ 24.)  Kvidera alleges that for a number of years, WECsys had been selling goods to government buyers even though these goods were substantially made in unapproved countries, such as China and India.  (Id. ¶ 25.)  If a good is not TAA compliant, the good must be listed as "open market" sourced.  (Id. ¶ 26.)  Kvidera had personal knowledge that WECsys did not mark noncompliant goods as open market sourced.  (Id. ¶ 27.)

Kvidera further alleges that WECsys modified its products and pricing offered without required authorization from the GSA.  (Id. ¶¶ 38–43.)  For example, Kvidera claims "that Defendant and Akinkuotu had added approximately 575,000 items to an agreed GSA contract schedule," yet, "[a]t the create date, [only] 18,427 items had been approved for sale . . . by the GSA."  (Id.

3

¶ 40.) Kvidera alleges that he discovered WECsys had created a false report to mislead a GSA officer who started to notice something was amiss with WECsys's listings. (Id. ¶¶ 43 and 45.)

In response to WECsys's alleged fraud, Kvidera claims he: (1) "investigated, reported, and opposed Defendant's false and fraudulent conduct" (Id. ¶ 51); (2) "took active steps to stop and correct [the unlawful conduct]" (Id. ¶ 52); (3) and as a result was "terminated[,]" "retaliated against, [and] discriminated against" by WECsys. (Id. ¶¶ 56–57 & 63–64.) The FAC provides the following factual allegations in support:

    a) ***Regarding the sale of non-TAA compliant products:*** Kvidera brought the issue to WECsys's attention "on multiple occasions." (Id. ¶ 35.) WECsys told Kvidera they would not remove the non-compliant items and would continue selling the non-compliant items to federal buyers. (Id. ¶ 35.) And "in response to [his] opposition . . . Akinkuotu told [Kvidera] to leave the issue alone." (Id. ¶ 35.)

    b) ***Regarding the unauthorized modifications:*** Kvidera brought the issue to WECsys in 2014. (Id. ¶ 44.) Kvidera explained the

4

modifications were unlawful, so they "must stop."  (Id.)  Akinkuotu responded: "It's only fraud if you get caught."  (Id.)  Kvidera notified WECsys's outside counsel of the possible fraud and the attorney "expressed his concern about the ongoing fraud engaged in by [WECsys]."  (Id.)

Furthermore, Kvidera claims WECsys engaged in unlawful conduct and Kvidera opposed such conduct until his termination in 2015.  (Id. ¶¶ 47–48.)

## IV. DISCUSSION

### A. Standard for Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted). Further, for an FCA retaliation claim, federal courts do not require plaintiffs to meet the heightened standard to plead with specificity under Rule 9(b). Elkharwily v. Mayo Holding Co., 955 F. Supp. 2d 988, 994 (D. Minn. 2013), aff'd, 823 F.3d 462 (8th Cir. 2016) ("An FCA-retaliation claim does not require a showing of fraud and, as a result, need not be pleaded with specificity under Rule 9(b).").

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).

### B. Retaliation Claims

To prevail on his FCA retaliation claim, Kvidera must prove (1) he was engaged in conduct protected by the FCA; (2) his employer knew he was engaged in protected activity; (3) his employer retaliated against him; and (4) "the retaliation was motivated solely by the plaintiff's protected activity." Schuhardt v. Washington Univ., 390 F.3d 563, 566 (8th Cir. 2004).

The MWA provides that an employer shall not retaliate against an employee who "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official." Minn. Stat. § 181.932, subdiv. 1(1). To prove a claim under the MWA, "the employee must show (1) she engaged in statutorily-protected conduct; (2) the employer took adverse employment action against her; and (3) there was a causal connection between her conduct and the employer's actions." Unterschuetz v. In Home Personal Care, Inc., 06-cv-851, 2008 WL 4572512, at * 6 (D. Minn. Oct. 14, 2008) (citing Buytendorp v. Extendicare Health Servs., 498 F.3d 826, 834 (8th Cir. 2007)). Because both the FCA retaliation claim and the MWA claim are subject to the same pleading requirements, WECsys argues that dismissal of both claims is warranted as Kvidera has failed to plead sufficient facts to support a claim that his termination was causally related to his protected activities.

WECsys asserts that the FAC only provides conclusory assertions and formulaic recitations of causation, and that such allegations fail to state a claim as a matter of law. The FAC does not allege that either WECsys or Akinkuotu threatened to take any adverse action against Kvidera for continuing his

7

protected conduct, and that Kvidera did not allege that he experienced any disparate treatment by WECsys or Akinkuotu because of his protected conduct. WECsys asserts federal courts have granted motions to dismiss FCA retaliation claims under similar circumstances. See United States v. HPC Healthcare, Inc., 723 F. App'x 783, 792 (11th Cir. 2018) (affirming dismissal, finding "[w]e also agree that Ms. Chase's allegation that she was demoted 'because she raised ethical issues concerning violations of the [False Claims] Acts' is a legal conclusion that fails to satisfy federal pleading requirements."); United States ex rel. Complin v. N. Carolina Baptist Hosp., No. 1:09CV420, 2016 WL 7471311, at *23 (M.D.N.C. Dec. 28, 2016) (adopting report and recommendation and finding that two-year gap between discovery of plaintiff's protected conduct and termination did not support inference of causation as plaintiff failed to include factual allegations sufficient to support an inference of retaliation).

     WECsys argues that any attempt by Kvidera to show causation through a temporal relationship between his alleged protected activity and his termination also fails. WECsys asserts for temporal proximity to establish causation, the temporal relationship must be very close. See Clark Cty. Sch. Dist. v. Breeden,

532 U.S. 268, 273 (2001) (citing cases that found three- and four-month periods between protected activity and retaliation insufficient to establish causation).

In this case, Kvidera alleges that he began his protected activity when he became aware of the fraud in 2013 and continued to oppose Defendant's fraudulent activities until his termination in March 2015. Taking Kvidera's allegations as true, WECsys argues Kvidera's termination in March 2015 cannot reasonably be presumed to have been caused by protected activity that began in November 2013 and continued the entire time he served as president of the company. See e.g. Dhar v. City of New York, 655 F. App'x 864, 865-66 (2d Cir. 2016) (affirming dismissal of FCA retaliation claim where alleged protected activity took place more than two years prior to alleged retaliation).

Kvidera responds that he has sufficiently pleaded his retaliation claims under a theory of temporal-proximity. Kvidera argues that because the FAC alleges he engaged in ongoing, protected conduct, the Court should measure temporal proximity according to Kvidera's last protected act, not the start of his protected activity in November 2013. In this case, Kvidera alleges that he engaged in protected activity up until his termination; that is a matter of days or hours from his last protected activity and his termination. Thus, based on the

9

timing of his last protected activity and his termination, he has sufficiently alleged causation based on temporal proximity.  See Wilson v. Arkansas Dep't of Human Services, 850 F.3d 368, 373 (8th Cir. 2017) (finding the six-week period between the EEOC charge and the termination plausibly alleged a but-for causal connection); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 92 (2d Cir. 2015) (two-month interval plausibly alleged temporal proximity); Docken v. Minnesota, 08-cv-4952 (JRT/SRN), 2009 WL 1086522 (D. Minn. Apr. 22, 2009) (denying motion to dismiss FMLA retaliation claim where time gap was eleven months).

Kvidera argues that when assessing allegations of temporal proximity, the Court must consider the timeframe between the last protected act and the alleged retaliation.  See Pierre v. Woods Services, Inc., Civ. No. 20-5881, 2021 WL 84068, at * 4 (E.D. Penn. Jan. 11, 2021) (FMLA retaliation); Si v. Laogai Research Foundation, 71 F. Supp.3d 73, 102 (D.D.C. 2014) (FCA retaliation).

The Court finds that Kvidera has sufficiently pleaded claims of retaliation under the FCA and the MWA.  The relevant case law generally supports the use of temporal proximity to establish causation on a retaliation claim.  See Wilson, 850 F.3d at 373.  Here, Kvidera has alleged that he was terminated within days or

hours of his engaging in protected activity.  As noted by the court in Wilson, "[u]nder the simplified notice pleading standard that governs [] retaliation claims, summary judgment motions – not motions to dismiss – should dispose of most unmeritorious claims."  Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)).   Given the relatively early stage of litigation, whether Kvidera can produce sufficient evidence to prove WECsys was motivated to terminate Kvidera's employment solely by his protected conduct is better addressed as a question for summary judgment.  See Frieberg v. Nextel West Servs., LLC, Civ. No. 13-361 (MJD/JSM), 2013 WL 6244553, at *15 (D. Minn. 2013) ("In short, whether or not plaintiff can ultimately garner other evidence to make out a retaliatory motive is an issue for summary judgment.  For the purposes of alleging a whistleblower claim, however, plaintiff has sufficiently alleged a retaliatory motive.").

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. 55) is **DENIED**.

Date:  December 13, 2021

s/Michael J. Davis  
Michael J. Davis  
United States District Court
